## STATE ex JOHNSON et v BOARD OF ED OF HANCOCK CO

Ohio Appeals, 3rd Dist, Hancock Co

No 375.   Decided Feb 27, 1937

A. G. Fuller, Findlay, for appellees.

Knepper, White & Dempsey, Columbus, and Jackson E. Betts, Findlay, for appellant.

## OPINION

By THE COURT

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hancock County granting the relators J. Pearl Johnson and others, electors resident of Marion Township School District in said county, a writ of mandamus against the Board of Education of Hancock County commanding said board to transfer the territory in said school district to the Findlay City School District in said county.

The petition for writ of mandamus was filed in the lower court by the relators on June 19th, and an amended and supplemental petition was filed in said cause on August 17th, 1936. The answer of the respondent was filed August 17th and the reply of the relators thereto was filed September 1st; and following the submission of all the evidence in said cause in the lower court on September 3rd, the respondent on leave granted by the court amended its answer by interlining immediately before the prayer a denial of the statements and averments in the amended petition contained not specifically admitted to be true in the answer, which was journalized in entry under date of September 11, 1936.

Upon the trial of the cause in the Common Pleas Court the court found upon the issues joined, for the relators and that a peremptory writ of mandamus should issue against the respondent, and, motion for new trial having been duly filed and overruled, judgment was entered upon this finding and it is from this judgment that this appeal is prosecuted.

The material facts in the case as shown by the pleading, record and bill of exceptions are as follows:

On the 23rd day of April, 1936, there was filed with the respondent County Board of Education, a petition containing the signatures of three hundred fifty-four (354) resident electors, being 83% of all the qualified electors of Marion Township School District, Hancock county, requesting the transfer of the territory comprising said township school district to the Findlay City School District in said county. The districts adjoined and were contiguous, and none of the territory sought to be transferred had been transferred during the period of five years prior to the date of the filing of said petition.

For some time prior to the filing of this petition, which will be hereafter referred to as the first petition, the respondent board had commenced its study of, and had been working upon, a tentative plan of organization of the school districts of the county under the new reorganization law (§§7600-1 to 7600-9 GC, inclusive). A number of meetings had been held wherein the question of the proper redistricting of the school districts of the county had been discussed.

Petitions from electors of school districts other than Marion Township School District and from electors of parts of Marion Township School District contiguous to Allen, Mt. Blanchard and Washington Township School Districts had been filed with the board indicating the school district to which the several signing petitions desired the territory of which they were resident to be assigned.

And the board of education pursuant to the provisions of §7600-3 GC, had called a meeting of all the members of boards of education of rural and village school districts within the county school district, as well as of interested persons, for the purpose of laying said proposed plan before them for advice and suggestion to be held on the 23rd day of April, 1936, which meeting had been duly advertised in accordance with the provisions of said section, and was held at the time and place and for the purpose designated in said advertisement.

It was at this meeting that Marcus Downing, an attorney of Findlay, representing the Board of Education of Marion Township School District and the signers of the first petition, appeared before the

County Board of Education in opposition to the proposed plan of reorganization and presented the petition hereinbefore mentioned, to the board, together with map of the territory sought to be transferred and the written consent of the Board of Education of the Findlay City School District to accept the transfer of territory provided for in said petition.

The county board, speaking through its secretary, limited Mr. Downing to ten minutes in which to present his argument against the proposed reorganization plan and in favor of the petition presented by him, and called time on him at the expiration of that period, and then told him that he and his clients were excused and the secretary then opened the door in invitation for them to leave. The meeting lasted all day.

No action was taken by the county board at this meeting nor at subsequent meetings held prior to May 16, 1936, on the petition with reference to the adoption of the proposed plan of reorganization; and following the meeting of April 23rd, the secretary of the board with the knowledge of two members of the board, prepared and furnished to a number of persons resident of Marion Township School District for circulation by them, forms of a petition to withdraw signature from the petition presented to the board by Mr. Downing, and a withdrawal petition composed of these forms was circulated in Marion Township School District and the signatures of certain of the signers of the original petition secured thereto, and on or about May 16th was filed with the county board. This withdrawal petition withdrew certain of the signers off of the first petition of relators filed April 23rd, and at the regular meeting of the county board on May 16th the first petition and the withdrawal petition were canvassed and checked in the presence of the attorney for the relators. The board determined that after deducting the number of qualified withdrawals found on the withdrawal petition, the first petition filed April 23rd was rendered ineffective in so far as the mandatory provisions of the statute requiring the board to make the transfer on the petition of seventy-five per cent of the electors resident of the school district is concerned, as the number of petitioners was reduced to less than seventy-five per cent of such electors. The board then proceeded at the same meeting to adopt a plan of reorganization providing for the division of Marion Township School Dis-

trict into six separate parts and the combining of one of said parts with the school district then known as Allen Township School District, and further providing that the remaining five parts, respectively, should become parts of the following school districts, to-wit: Washington Township School District; Findlay City School District; Liberty Township School District; Mr. Blanchard School District, and Vanlue School District.

After the adoption of the plan at the meeting of May 16th the acting county school superintendent, with some of the members of the county board, on May 21st took the plan, together with a map, to the State Director of Education and he directed that the plan be changed by eliminating the transfer of territory from Marion Township District to Liberty Township District and including that territory in the territory to be transferred to the Findlay City School District, and this directed change was accordingly made prior to June 4th.

On June 4th another meeting of the board was held at which it was reported to the board by the acting superintendent that the original plan as modified at the direction of the director of education had been tentatively approved by the director, and at this meeting separate resolutions were adopted providing for the creation pursuant to the provision of §4736 GC, of a new school district to be known as Allen Township Rural School District by uniting therewith the part of Marion Township School District which under the reorganization plan adopted May 16th was to be combined with Allen Township School District, and for the creation pursuant to the provisions of §4736 GC of another new school district to be known as the Vanlue Village School District by joining therewith the territory known as the Vanlue Village School District with the part of the Marion Township School District which under said plan of reorganization was to be attached to Vanlue School District, and further providing for the transfer of territory from Marion Township School District to said new school districts, and to Washington Township School District, Findlay City School District, and Mt. Blanchard School District, the transfers provided in said resolutions being in conformity with the plan adopted at the meeting of May 16th except that under the change in plan above referred to the territory which under the plan as originally adopted was to be transferred to the Find-

lay City School District and the Liberty Township District was all transferred to the Findlay City School District.

The resolutions of transfer provided an equitable division of funds and indebtedness between the districts involved.

In a statement in the minutes of the meeting preceding the separate resolutions making the transfer to the Findlay City School district the following recital appears: "Following hearings before the Assistant Director of Education and hearings and petitions on file in the county office in regard to the following part of Marion Township School District, the Hancock County Board of Education took the following action pursuant to §4696 GC." However, the copies of the record of the county board offered in evidence do not show that any petition was filed requesting the transfer of the territory mentioned, to the Findlay City School District and the resolution does not contain any recitation or declaration that such a petition had been filed or that the resolution is founded on any such petition.

There is also a recital in the part of the minutes of the meeting of June 4th preceding the minutes with reference to the adoption of the various resolutions of transfer that at a meeting on June 1st of the acting County Superintendent of Schools and a member of the board and other persons with E. N. Deitrick, assistant Director of Education, that, "Mr. Deitrick made a verbal report that he felt that the Hancock County Board of Education had given much thoughtful attention and work on their Plan of Reorganization and on the whole had done a good job of it. And that due to this and the fact that Hancock County maintained a good school system he would approve their plans and place the responsibility for being placed in reality in the hands of the Hancock County Board of Education." But there is no evidence of actual formal approval except a letter under date of June 12th, 1936, signed by E. N. Deitrick, Assistant Director, and E. L. Bowsher, Director of Education, addressed to E. E. Ray, Clerk, County Board of Education, Findlay, Ohio, in which it is stated:

"The plan of organization of Hancock County submitted by your county board of education as provided by law has been approved by the State Department of Education to become effective as of June 15th, 1936."

There is no evidence that a notice of the time and place of a hearing to consider the change of the adopted plan at the meeting of May 16th was given and as the period of time elapsing between the meetings of May 16th and June 4th was only nineteen days, it would have been impossible to have published such notice on the same day of each week for four consecutive weeks as required by §7600-3 GC, prior to the time such change in plan was acted upon by the board. And the Board of Education of Marion Township School District did not agree to the transfer.

And there is no evidence as to whether a complete transcript of all the proceedings of the board with respect to plan of reorganization was transmitted to the Director of Education.

And there is neither any evidence nor allegation in the pleadings that a map was filed with the Auditor of Hancock County showing the boundaries of the territories transferred by the resolutions adopted at the meeting of June 4th or of the acceptance by the Findlay City School District of the territory transferred to it.

There is no allegation in the pleadings that notice of the transfers to districts of the county school district was given as required by the provisions of §4692 GC, although there is evidence that within two or three days after June 4th, E. E. Ray, acting County School Superintendent and secretary of the board, posted three notices in the area that was transferred to the Mt. Blanchard School district and three notices in the area that was transferred to Washington Township School District.

No remonstrances were filed against the creation of the new district designated as Allen School District, the new district designated as Vanlue School District, or the territory from Marion that had been transferred over to Washington and to Mt. Blanchard, and it does not appear from the evidence that remonstrances (unless the petition of the electors hereinafter mentioned may be considered a remonstrance) were filed by the resident electors of any of the parts of Marion Township School District, resolutions for the transfer of which had been passed at the meeting of June 4th.

On the 9th day of June, 1936, after the resolutions had been passed at the meeting of June 4th transferring the territory of the Marion Township School District, the relators filed a second petition with said board similar in form and asking for the

transfer of the same territory described in said first petition to said Findlay City School District, and which was signed by 358 resident electors, being 88% of the resident electors of Marion Township School District.

On June 19, 1936, being prior to any meeting of said county board after the filing of said second petition, relators brought this action in mandamus.

On the 15th day of August, 1936, at a meeting of said board respondent refused to transfer said territory described in the petition filed June 9th for the reasons alleged by the board that there was no longer any such territory as described in said second petition and because the change in boundary lines requested would not be in accordance with the adopted plan of organization and would be contrary to the provisions of §7600-7 GC.

The respondent-appellant specifies a number of assignments of error in its brief, but in the view we take of this case it is necessary to consider only the assignment that the decision, order and judgment of the common pleas court is contrary to law, as a consideration of this assignment disposes of the entire case.

The following sections and parts of sections of the General Code are pertinent to a discussion of this question, to-wit:

Sec 4692 GC. "A county board of education may transfer a part or all of a school district of the county school district to an adjoining district or districts of the county school district. Such transfer shall not take effect until a map is filed with the auditor of the county in which the transferred territory is situated, showing the boundaries of the territory transferred, and the notices of such proposed transfer have been posted in three conspicuous places in the district or districts proposed to be transferred, or printed in a newspaper of general circulation in said county, for ten days; nor shall such transfer take effect if a majority of the qualified electors residing in the territory to be transferred shall, within thirty days after the filing of such map, file with the county board of education a written remonstrance against such proposed transfer. * * * The county board of education is authorized to make an equitable division of the school funds of the transferred territory either in the treasury or in the course of collection. And also an equitable division of the indebtedness of the transferred territory."

Sec 4696. "A county board of education may, upon a petition of a majority of the electors residing in the territory to be transferred, transfer a part or all of a school district of the county school district to an exempted village, city, or county school district, the territory of which is contiguous thereto. Upon petition of seventy-five per cent of the electors in the territory proposed to be transferred the county board of education shall make such transfer. A county board of education may accept a transfer of territory from any such school district and annex same to a contiguous school district of the county school district.

In any case before such a transfer shall be complete (1) a resolution shall be passed by a majority vote of the full membership of the board of education of the city, exempted village or county school district making or accepting the transfer as the case may be; (2) an equitable division of the funds and indebtedness between the districts involved shall be made by the county board of education, which in the case of territory transferred to a county school district shall mean the board of education of the county school district to which such territory is transferred, and (3) a map shall be filed with the county auditor of each county affected by the transfer." * * *

Sec 4736 GC. "The county board of education may create a school district from one or more school districts or parts thereof, and in so doing shall make an equitable division of the funds or indebtedness between the newly created district and any districts from which any portion of such newly created district is taken. Such action of the county board shall not take effect if a majority of the qualified electors residing in the territory affected by such order shall within thirty days from the time such action is taken file with the county board of education a written remonstrance against it." * * *

Sec 7600-1 GC. On or before the first day of September, 1935, and on or before the first days of April, 1936, 1937 and 1938, each county board of education of the state shall prepare a diagram or map of the county showing the then location and position of all school districts therein, the location and character of roads, the location of streams and natural barriers, the location of each school building and of each route over which pupils are transported, together with a statement of the size and condition of each building and the number and ages of children attending the same. The ter-

ritory in adjoining counties, or in any adjoining city or exempted village school district, which, in the opinion of the county board of education, should be attached to or detached from any such county, city or exempted village school district for the purpose of economy, efficiency and convenience, shall also be shown on such diagram or map. The board of education of each rural and village school district which is located wholly or partially within the county, shall, upon the request of the county board of education, promptly furnish to the county board of education, such information as it may require in the preparation or subsequent modification of such diagram or map.

Sec 7600-2 GC. Upon completion of each of these surveys, the county board of education shall prepare a new diagram or map of the school districts in the county school district prescribing the transfers of territory, elimination of school districts or the creation of new school districts which will provide a more economical and efficient system of county schools; and on or before June 1st, annually, shall adopt the same as the plan of school district organization.

Sec 7600-3 GC. Before adopting the plan of reorganization each year, the county board of education shall call a meeting of all members of boards of education of rural and village school districts within the county school district, as well as of interested persons, and shall lay the proposed plan before them for advice and suggestions. There shall be published for four consecutive times in a newspaper of general circulation in the territory affected, a notice of the time and place of a hearing to consider a plan or organization, or a contemplated change of an adopted plan. Such publication shall be made at regular intervals and not less than one week each within sixty days prior to such hearing.

Sec 7600-4 GC. In case the county board of education deems it necessary to modify or change the adopted plan, the board shall provide for a public hearing before any change therein shall be made.

Sec 7600-5 GC. In case the affected boards of education fail to agree on transfers of territory as hereinbefore provided, a complete transcript of all proceedings with respect thereto shall be transmitted to the director, who shall thereafter order such transfers of territory or the creation of such new school districts as he shall deem in harmony with principles of economy, efficiency and convenience.

Sec 7600-6 GC. The director shall carry out any steps involved in the formulation of a plan of district reorganization as hereinbefore required, in the event any county or other board of education fails to act. The director, in such case, shall proceed to make the survey, prepare and adopt a plan of county school district organization for such county. For that purpose the director is hereby vested with all the rights, powers and duties, hereinbefore conferred upon the county board of education, relative to the adoption of such plan, with such additional power as will enable the director to procure and furnish such information as he deems necessary.

Sec 7600-7 GC. On or before the 15th day of October, 1935, and on or before the first day of July, 1936, 1937 and 1938, the county board of education shall transmit such adopted plan of organization to the director, who shall approve the same, with such modifications and additions thereto as he deems desirable, and shall certify his approval to the county board of education: Provided, however, that the director shall grant one or more hearings to the county board of education, to any affected board of education and to any interested persons affected, with reference to any such modification or additions. Upon approval of the director, such plan of organization within any county shall take effect upon a date to be fixed by the director, and thereafter no school district or parts thereof shall be transferred or the boundary lines thereof changed unless such transfer or change of boundary lines is in accordance with such adopted plan of organization. Nothing in this act shall be construed as a delegation of authority to the county board of education or the director to create a debt in any school district for any purpose.

Sec 7600-8 GC. A county plan of organization may be modified and changed, at any time after adoption, by a county board of education, or by the director, in the same manner as provided for the adoption of such plan.

The first question that arises is whether §§4692, 4696 and 4736 GC were repealed by the enactment of §§7600-1 to 7600-8 GC, popularly designated as the School Foundation Law relating to the adoption and putting into effect of a "plan of organization" of suchool districts.

There is no express provision in the School Foundation Law repealing the pro-

visions of §§4692, 4696 and 4736 GC, and the repeal, if any, of these sections must be by implication.

Courts consistently hold that if by any reasonable construction a later statute can be reconciled with a former one the former will not be held to have been repealed by implication. **Goff v Gates, 87 Oh St 142.**

The provisions of §§7600-1 to 7600-8 GC, inclusive, and those of §§4692, 4696 and 4736 GC, all relate to transfers of school territory and are therefore said to be in pari materia, that is to say, they relate to the same subject matter and must be read together unless the provisions of the latter are so repugnant to those of the earlier that they cannot be reconciled. It will be noted that nowhere in the School Foundation Law is any authority extended to any one to actually make a transfer of territory nor is any machinery provided for therein for the actual making of a transfer of territory. The Director of Education is authorized by §7600-5, GC, to "order" such transfers of territory or the creation of such new school districts as he shall deem in harmony with principles of economy, efficiency and convenience in case affected boards of education fail to agree on transfers of territory in accordance with a plan of organization that is adopted, but ordering transfers to be made and actually making them are entirely different.

Secs 4692, 4696 and 4736, GC, provide the machinery and the only machinery for actually making the transfers and the equitable distribution of funds and indebtedness between districts involved in such transfers contemplated by the provisions of §§7600-1 to 7600-8, GC. If §§4692, 4696 and 4736, GC, had been repealed, there would be left no means of equitably dividing the funds and indebtedness between districts from and to which territory has been annexed. It is a well-settled principle of law that in the absence of statute, where territory is annexed to another political sub-division there can be no division of funds and indebtedness between the two sub-divisions. Ruling Case Law, Volume 24, page 566.

It is also a well-settled rule of law, evidenced by many cases in Ohio as well as other jurisdictions, that where statutes deal with the same subject matter and are parts of a homogeneous system, although enacted at different times the latter enactment unless complete in itself and utterly irreconcilable with the earlier, will be considered as supplementary to the preceding enactments on the same subject and such construction must be accorded to them when taken together as a part of such system as to give proper force and effect in each and all of the said statutes. **Manuel v Manuel, 13 Oh St 458; Doyle v Doyle, 50 Oh St 330; Maxfield, Treasurer, v Brooks, et al, 110 Oh St 566; Cincinnati v Conner, 55 Oh St 82.**

Applying this rule of construction to the statutes in question, it will be found that all the provisions of the former section may be given full force and effect without conflicting with any of the provisions of the later sections, except the provisions of §7600-7, GC, that "Upon approval of the director, such plan of organization within any county shall take effect upon a date to be fixed by the director, and thereafter no school district or parts thereof shall be transferred or the boundary lines thereof changed unless such transfer or change of boundary lines is in accordance with such adopted plan of organization."

As the provisions of §§4692, 4696 and 4736, GC, are essential to vitalizing and carrying into effect the transfers of territory contemplated by the provisions of §§7600-1 to 7600-8, GC, and may be harmonized with all the provisions thereof except the provision of §7600-7, GC, set forth in the preceding paragraph, under the rule of construction hereinbefore mentioned, we, concurring with the reasoning in Opinion No. 5176 of the Attorney General of Ohio, under date of 2-20-36, hold, that §§4692, 4696 and 4736, GC, were not repealed by implication by the subsequently enacted provisions of the so-called School Foundation Law (§§7600-1 to 7600-8, GC, inclusive) except in so far as the powers that may be exercised thereunder are limited by the provisions of §7600-7 GC hereinbefore quoted.

And under the maxim "expressio unius est exclusio alterius" the limitation contained in said provision of §7600-7, GC, is the only restriction on the exercise of such powers.

The powers to be exercised by the county board of education in the transfer of school districts or parts thereof and/or the creation of new school districts within the county school district, under the provisions

of §§4692 and 4736, GC, clearly come within said limitation. Whether or not transfers of territory from a county school district to a city or exempted village district upon the petition of resident electors under the provisions of §4696, GC, come within the said limitation it is unnecessary to determine in the instant case as the rule of law applicable to this phase of the case would, in either event, be the same.

Under the specific terms of the provisions of §7600-7 last above quoted, the inhibition "that no school district or parts thereof shall be transferred or the boundary lines thereof changed unless such transfer or change of boundary line is in accordance with such adopted plan of organization" became operative only after the plan of organization became effective upon approval by the director ·of education and by the director fixing a date upon which the plan should take effect, so that in the instant case the plan having been approved by the director under date of June 12th to become effective June 15th, 1936, the inhibition was not applicable to any of the proceedings had by the petitioners or the county board of education with reference to the transfers of territory under the provisions of §§4692 and 4696, and the creation of the new districts under the provisions of §4736, GC, prior to the dates of June 12th and 15th, 1936.

The next question to be considered is, therefore, whether the first petition of the relators and others, under the provisions of §4696, GC, bearing the signatures of more than seventy-five per cent of the electors resident of Marion Township School District, was self-executing in the sense that following the filing thereof and before action by the board thereon, the signers thereof could withdraw from the same, there being no statutory provision as to withdrawals.

In the case of State ex rel Kahle v Rupert, 99 Oh St 17, the rule is laid down in the per curiam, that "In the absence of statutory provisions to the contrary an elector signing a petition authorized by the statutes of this state, invoking either official or judicial action has a right to withdraw his name from such petition, or, if he be the sole petitioner, to dismiss the same at any time before judgment has been pronounced, or before official action has been taken thereon."

From the same per curiam it appears that the remedy of a petitioner to prevent unreasonable delay in the official action on a petition is by mandamus to compel the performance of such official action; but until official action is taken, or an action in mandamus is brought, any person signing a petition has the right to withdraw his name therefrom.

In the case of the State ex rel Dennison v Board of Education, 17 Abs 478, the Court of Appeals of the Second District, in an action involving the construction of §4696, GC, in relation to withdrawals from petition provided for therein, basing its decision on the portion of the per curiam above quoted, held:

"A signer on a petition to transfer territory from one school district to another may withdraw his name at any time before action by the board with whom the petition is filed, the petition for such transfer not being self-executing, and this is true although the board delay an unreasonably long time before acting on the petition."

Following these authorities, we hold that signers of the petition in the instant case had the legal right to withdraw their names therefrom at·any time prior to the time the board of education took official action thereon, which was May 16th, and a sufficient number of signers having withdrawn before that time to reduce the percentage of signers below a number equivalent to seventy-five per cent of the electors resident of the school district, that the board of education ·was not under a mandatory duty required to make the transfer in the petition provided for.

While the secretary of the board furnished blank withdrawal petitions to various persons, some of which were furnished with the knowledge of two members of the board, it does not appear that he solicited signers for such withdrawal petition or that the members of the board participated in any way in securing signatures to such withdrawal petitions, and the action of the clerk with the knowledge of the two board members does not constitute either an abuse of discretion or fraud on the part of the board, or otherwise invalidate the withdrawal petition or their action in finding, after the withdrawal petition was filed that the number of petitioners on the original petition had been reduced below seventy-five per cent of the resident elec-

202

tors of the district, making their duty with reference thereto permissive and not mandatory. Neither does the action of the chairman of the meeting in limiting the attorney for relators to ten minutes in which to present his arguments in favor of the petition and against the plan of reorganization, or in suggesting that he and his clients retire after the conclusion of his argument, constitute either an abuse of discretion or fraud on the part of the board, or otherwise invalidate the action thereafter taken by the board on the petition or on the reorganization plan, and it does not affirmatively appear that such limitation or suggestion was unreasonable in view of the multiplicity of matters to be considered and discussed at the meeting or that the petitioners were deprived of any right they may have had in the premises.

This disposes of the contention of the relators based on their first petition, so we will proceed to a consideration of their right to the relief asked on the second petition.

On June 4th, 1936, at a time there was no petition on file which made it the mandatory duty of the board of education to act otherwise, the board adopted separate resolutions providing for the creation pursuant to the provisions of §4736, GC, of a new school district to be known as Allen Township Rural School District by uniting to the school district then known as Allen Township School District, a part of Marion Township School District, and for the creation of another new school district to be known as the Vanlue Village School District by uniting with the school district then known as Vanlue Village School District a part of Marion Township School District. These resolutions were adopted prior to the approval of the plan of organization by the director of education, and for the reasons hereinbefore mentioned, the adoption thereof was not inhibited by the provisions of §7600-7, GC. They were also adopted prior to the filing of the second petition by relators and others with the board on June 12th.

Under the provisions of §4736, GC, these resolutions became effective immediately on passage without the filing of a map with the county auditor and without the giving of notice, subject to be rendered ineffective by filing within thirty days of the time such action was taken, of remonstrances by a majority of the qualified electors residing in the territory affected by such orders which territory in each instance was the entire territory comprising such new school district. **State v Schneider 103 Oh St 492.**

No remonstrances were filed within the period mentioned and the second petition filed by the relators and others on June 9th cannot be considered a remonstrance as none of the signers thereof were electors of Allen Township School District or Vanlue Village School District as such districts existed prior to the creation of such new districts, and it is impossible to determine from the facts in evidence the percentage of the signers from any portion of Marion Township or the proportion of signers in those parts of Marion Township School District combined to create new districts or to the total number of voters in such new districts.

When the second petition was filed by relators on June 9th it appears that irrespective of whether the proceedings for the adoption of the plan of organization of the county school district complied with the statutory requirements, and irrespective of whether other transfers of territory of Marion Township School District had been legally made, that at least two parts of Marion Township School District had by separate resolutions adopted by the County Board of Education been united with other school districts of the county school district in the creation of the new school districts, so that these two portions of Marion Township School District were in contemplation of law no longer parts of said Marion Township School District and were no longer contiguous to Findlay City School District.

And as the statutes gave power over the same territory to two agencies, one the resident electors of the territory who might institute proceedings to have such territory transferred to a contiguous city school district, and the other to the County Board of Education which might on its own initiative create new school districts and include therein parts of such territory, there became vested in the agency first acting to exercise its jurisdiction over such territory, which in the instant case was the County Board of Education, exclusive authority to act with reference thereto, and the parts of the territory which by actions of the board were combined with other territory to form such new districts were by such actions withdrawn from the resident electors of Marion Township School District as it existed prior to taking of

such actions so far as they were empowered to exercise any power with reference thereto by petition under the provisions of §4696, GC. **Trumbull County Board of Education v State ex Van Wye, 122 Oh St 247**; Opinions of Attorney General, 1930, Volume 2, page 859, umber 1947.

And the power of the resident electors of the district from which such parts were taken, to exercise any power by petition with reference thereto under the provisions of §4696, GC, could be revived only in the event remonstrances were filed in accordance with the provisions of §4736, GC, rendering such actions by the board ineffective. This was not done, and consequently at the time the second petition was filed, as well as at the time the action in mandamus was commenced, trial had and judgment entered, there was not in existence a school district contiguous to Findlay City School District conforming to the map, or description contained in the second petition for transfer, and the petitioners were therefore not entitled to any relief by way of mandamus.

For the reasons mentioned, the judgment of the court of common pleas is contrary to law in that it is not supported by any evidence and for this reason will be reversed and final judgment entered in favor of the appellant at costs of appellees.